UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONALD PARHAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-923-B |
| | § | |
| RYDER SYSTEM, INC., | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Ryder System, Inc.'s Motion for Summary Judgment (doc. 18).

For the reasons stated below, Defendants' Motion is **GRANTED**.

I.

BACKGROUND[1]

This case arises out of a work-related injury that Plaintiff Ronald Parham alleges occurred due

to Defendant Ryder System, Inc.'s (RSI) negligence. Parham alleges that on September 9, 2010, he

sustained injuries to his knee, shoulder, back, and body in general when he fell due to a four foot

difference in two levels of a trailer that he asserts was controlled by RSI. Docs. 1-1, Pl.'s Second Am.

Pet. Ex. A ¶ 8; 20-4, Parham Dep. Ex. 4, at 89-90. The alleged injury occurred at the distribution

facility of Prime Source Building Products, Inc. Docs. 19, Def.'s Br. 3; 20-4, Parham Dep. Ex. 4, at

86; 20-6, Hammel Aff. Ex. 6 ¶¶ 5-6, 8. Primesource is a customer of Ryder Integrated Logistics,

which hauls construction and building materials from Primesource to home improvement centers

---

[1]The Court takes its factual account from the uncontested facts contained in the summary
judgment record. Any contested fact is identified as the allegation of a particular party.

and other Primesource customers. Docs. 19, Def.'s Br. 3; 20-4, Parham Dep. Ex. 4, at 86; 20-6, Hammel Aff. Ex. 6 ¶¶ 3, 6. RSI insists that it neither possessed, owned, maintained, nor controlled the premises or the trailer upon which Parham was allegedly injured. Docs. 19, Def.'s Br. 3; 20-5, Hodes Aff. Ex. 5 ¶¶ 10-11; 20-4, Parham Dep. Ex. 4, at 87, 147; 20-6, Hammel Aff. Ex. 6 ¶¶ 7-8. It further maintains that it never had an employment relationship with Parham. Doc. 22, Def.'s Br. 6-7; 20-5, Hodes Aff. Ex. 5 ¶ 9.

After a series of pre-suit exchanges with individuals who allegedly represented RSI's insurers and counsel, Parham filed suit in state court on July 9, 2012, asserting claims of negligence and gross negligence. Docs. 21, Pl.'s Resp. 3; 1-5, Pl.'s Orig. Pet. Ex. E-1. In his Original Petition, Parham named Ryder Freight Systems, Inc. d/b/a Ryder Truck Rental and Leasing as Defendant. Docs. 21, Pl.'s Resp. 3; 1-5, Pl.'s Orig. Pet. Ex. E-1. Parham's counsel chose this name based on a Google search that he performed, which revealed a listing for Ryder Truck Rental and Leasing at the address where Parham had previously worked, as well as a search of the Texas Secretary of State's website for the name "Ryder System, Inc.," which returned a listing for a corporation named Ryder Freight System, Inc. Doc. 21, Pl.'s Resp. 4. Parham served Ryder Freight Systems, Inc. d/b/a Ryder Truck Rental and Leasing through the Texas Secretary of State on July 18, 2012. *Id.* The Secretary later informed Parham in a letter that though he had mailed the citation to the named defendant at the Florida address listed on the Secretary's website, the citation had been returned bearing a notation "Forwarding Order Expired." Doc. 21, Sec'y of State Letter Att. J.

Parham filed his First Amended Petition on November 12, 2012. Doc. 1-5, Pl.'s First Am. Pet. Ex. E-5. In preparing the amended pleading, Parham conducted a survey of the Florida Secretary of State's website and discovered a listing for Ryder System, Inc., with its registered agent listed as

Robert D. Fatovic, 11690 NW 105th Street, Miami, FL 33178. Docs. 21, Pl.'s Resp. 4-5. Parham

therefore served its First Amended Petition on Ryder Freight Systems, Inc. d/b/a Ryder Truck Rental

and Leasing at this latter address, and Defendant RSI received the Amended Petition on November

30, 2013. *Id.* at 5; Doc. 22, Def.'s Reply 4. In response to this service, Parham's counsel spoke with

Colleen Murphy, a claims representative for Ryder Transportation Services, who asked for an

extension of the deadline to answer the Amended Petition.  Docs. 21, Pl.'s Resp. 5; 21, Murphy

Letter Att. M.

Parham's counsel spoke to RSI's counsel on January 9, 2013, and RSI's counsel informed him

that he would not be filing an answer to Parham's Amended Petition, because RSI had no interest

or affiliation with the named Defendant, Ryder Freight Systems, Inc. Docs. 21, Pl.'s Resp. 5; 21,

Ashcraft Email Att. O.  Subsequent to this conversation, Parham's counsel found a document on

the Florida Secretary of State's website which indicated that the address to which the Texas

Secretary of State mailed Parham's Original Petition had actually been a proper service address for

RSI before 2005. Docs. 21, Pl.'s Resp. 5; 21, Registered Agent Amendment Att. S. Parham then filed

a Second Amended Petition on February 1, 2013, naming RSI as Defendant. Docs. 21, Pl.'s Resp.

5; 1-5, Pl.'s Second Am. Pet. Ex. E-11.  Citation was served on the Texas Secretary of State on

February 13, 2013, Docs. 21, Pl.'s Resp. 5; 21, Return of Service Att. V, and was received by RSI on

February 26, 2013. Doc. 1, Not. of Removal 1. RSI removed this action to federal court on February

28, 2013, and filed the instant Motion for Summary Judgment on October 11, 2013. Doc. 18, Def.'s

Mtn. Summary Jmt.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). But the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

### III.

### ANALYSIS

RSI moves for summary judgment on Parham's negligence and gross negligence claims, arguing that they are time-barred as a matter of Texas law. RSI also argues that Parham's negligence and gross negligence claims must fail because it was not Parham's employer, and therefore it did not

owe him a duty. Consequently, it did not breach a duty to Parham nor did it proximately cause Parham's alleged injuries. Parham opposes summary judgment, arguing that his claims are timely because his Second Amended Petition relates back to the date on which he filed his Original Petition. He also maintains that he has raised a genuine issue of material fact as to each element of his negligence claims.

A. *Statute of Limitations*

RSI argues that Parham's claims are time-barred because he did not name RSI as Defendant until after the statute of limitations had expired under Texas law. Parham argues that though he served RSI after the limitations period had expired, his amended pleadings relate back to the date he filed his Original Petition, which was within the limitations period.

The statute of limitations for personal injury claims in Texas is two years from the day that the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998) ("A cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy."). Both parties agree that the limitations period for Parham's claim ended on September 9, 2012. Docs. 21, Pl.'s Resp. 7; 19, Def.'s Br. 1.

While claims filed after the limitations period has expired are generally barred, Rule 15(c)(1)(C) allows for amendments to pleadings to relate back to the date of the original pleading under limited circumstances. Fed. R. Civ. P. 15(c). When an amendment changes a party or the naming of a party, it will relate back to the date of the original pleading if

> Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).[2] Rule 4(m) establishes that a court must dismiss an action without prejudice or order that service be made within a specified time period "[i]f a defendant is not served within 120 days *after the complaint is filed*." Fed. R. Civ. P. 4(m) (italics added).

RSI argues that Parham's claims are time-barred because Parham did not file suit against RSI until after the limitations period expired. Doc. 19, Def.'s Br. 5. It further argues that Parham's Second Amended Petition should not relate back to the date of the original pleading under Rule 15(c)(1)(C) because Parham submits no evidence to show that RSI received notice of the suit within the 120-day period following the filing of the Original Petition, as required by the Rule. Doc. 22, Def.'s Reply 2-6. Parham insists that his claims remain timely because his Second Amended Petition relates back to the date on which his Original Petition was filed. Specifically, he alleges that his First Amended Petition, which was filed on November 12, 2013, and served on RSI on November 30, 2013, was sufficient to give RSI notice and knowledge of this action within the period permitted by Rule 15(c)(1)(C). Doc. 21, Pl.'s Resp. 7. According to Parham, the amendments he made in his Second Amended Petition to add RSI as Defendant must therefore relate back to the date his Original Petition was filed on July 19, 2012. Parham also argues that the 120-day period extends from the final day of the statute of limitations period, which was September 9, 2012, and not the date on

---

[2]Rule 15(c)(1)(B) provides that an amendment will relate back when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Because the only amendment that Parham made to his First Amended Petition was to change the name of the defendant, this condition is met.

which the Original Petition  was filed. Doc. 21, Pl.'s Resp. 7; 21-1, Pl.'s Br. 2.

The initial 120-day period in which amendments to the pleading would relate back ended

before Parham served his First Amended Petition on RSI. Contrary to what Parham argues, the 120-

day period extends from when the complaint is filed, not the end of the relevant limitations period.

Fed. R. Civ. P. 4(m). Because the Original Petition was filed July 19, 2012, therefore, Parham had

until November 6, 2012, to give notice to RSI such that it would not be prejudiced by defending on

the merits in this case. Parham argues that RSI received notice when it received his First Amended

Petition, but he admits that RSI only received the Amended Petition on November 30, 2012, some

weeks after the period for relation back ended. Doc. 21-1, Pl.'s Br. 2. Parham's claims would

therefore not normally relate back to the date that his Original Petition was filed and should be

barred by the statute of limitations, which ended on September 9, 2012.

That said, the Court declines to dismiss Parham's claims on limitations grounds for two

reasons. First, as will be shown below, the Court is able to decide this Motion on other grounds

without ruling on the statute of limitations issue. Second, the Court questions the propriety of

deciding this Motion on the grounds of limitations given Parham's diligent, albeit misdirected, efforts

to properly name the defendant and the fact that RSI likely received notice soon after the period

allowed by Rule 15(c)(1)(C) ended. As Parham shows, he initially named the defendant in this case

based on a Google search, which listed a company with the same address and similar name as

Parham's employer, and a search of the Texas Secretary of State's website, which only had a listing

for a company named Ryder Freight System, Inc. Doc. 21, Pl.'s Resp. 4. This Ryder Freight System,

Inc., was a non-resident corporation that listed a service address identical to RSI's former address.

Docs. 21, Pl.'s Resp. 5; 21, Registered Agent Amendment Att. S. Additionally, though RSI denies

it, it likely received notice and knowledge of this case by November 30, 2013, soon after the 120-day

period permitted by Rule 15(c) ended, because the First Amended Petition was delivered to RSI's

home office and listed a defendant with a name that is very similar to RSI's. Docs. 21, Registered

Agent Amendment Att. S; 14, Amended Answer ¶ 3. All of this shows that Parham made a

reasonable mistake in misnaming Defendant and that he had good cause for the delay in serving RSI,

which in turn may justify extending the period for relation back.

Whether Rule 15(c)(1)(C) allows a court discretion to extend the period in which

amendments will relate back is unclear. The rule merely states that relation back is appropriate if a

defendant receives notice and knowledge of the action within the period provided by "Rule 4(m) for

serving the summons and complaint." Fed. R. Civ. P. 15(c)(1)(C). Rule 4(m), however, not only

prescribes a 120-day period for serving a defendant, but it also *requires* a court to extend this time

period if the plaintiff shows good cause for its failure to serve a defendant. Fed. R. Civ. P. 4(m).

Although the case law on the question is sparse, the Fifth Circuit has indicated that, like the time

period for service under 4(m), the time period in which a defendant must receive notice under Rule

15(c)(1)(C) in order for an amended pleading to relate back may also be extended upon a showing

of good cause. *Tapp v. Shaw Environmental Inc.*, 401 F. Appx. 930, 933 (5th Cir. 2010) (citing

*Skoczylas v. Fed. Bureau of Prisons*, 961 F.2d 543, 545 (5th Cir. 1992) ("The only significant

difference between the *Schiavone* rule and amended Rule 15(c) is that, instead of requiring notice

within the limitations period, relation back is allowed as long as the added party had notice within

120 days following the filing of the complaint, *or longer if good cause is shown*.") (italics added)).

Lending further weight to this assumption is the fact that it comports with the purpose of relation

back: to balance the interests of the defendant, protected by the statute of limitations, with the

preference in the Federal Rules of Civil Procedure and Rule 15 for resolving disputes on their merits. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010).

With uncertainty clouding the limitations issue in this case, and because the Court can resolve this Motion on other grounds, the Court turns instead to its analysis of Parham's negligence and gross negligence claims.

*B. Negligence and Gross Negligence*

RSI also moves for summary judgment on the grounds that the summary judgment evidence conclusively shows that it was not Parham's employer, and that it therefore did not owe him a duty or breach a duty to provide a safe workplace or safe equipment. Parham counters that he has presented sufficient evidence to raise a genuine issue of material fact as to whether RSI was his employer, and that, as Parham's employer, RSI owed him a duty to provide a safe workplace and safe equipment.

In order to establish a claim of negligence, a plaintiff must produce evidence to establish a duty, a breach of that duty, and damages proximately caused by that breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). Whether a duty exists is a threshold inquiry and a question of law for the court to decide. *Id.* An employer has continuous, non-delegable duties to provide its employees with a safe workplace and to furnish reasonably safe instrumentalities. *Id.*; *Austin v. Kroger Texas LP*, 731 F.3d 418, 424-25 (5th Cir. 2013). Under Texas law, the test to determine whether an individual is an employee is the purported employer's right to control the details of that individual's work. *Coronado v. Schoenmann Produce Co.*, 99 S.W.3d 741, 746 (Tex. App.–Houston 2003, no pet.), abrogated on other grounds by *Wingfoot Enterprises v. Alvarado*, 99 S.W.3d 741 (Tex. 2003); *Thompson v. Travelers Indemnity Company*, 789 S.W.2d 277, 278 (Tex. 1990). The question

is whether the purported employer has the right to control the progress, details, and methods of operations of the work. *Flores v. North American Technologies Group, Inc.*, 176 S.W.3d 442, 448-49 (Tex. App.–Houston 2004, pet. denied).

Parham contends that a determination of whether RSI was his employer also conclusively establishes that it owed him a duty, but the inquiry is actually not that straightforward. An entity can have a relationship with an employee and be subject to liability for negligence without being an employee's immediate employer. Specifically, parent corporations, general contractors, and other corporations that possess some sort of relationship to the employee, but who are not his formal, immediate employer, can still owe duties to provide safe workplaces and instrumentalities. *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993) (considering the duty owed by a landlord oil company to its tenant's employee); *Morris v. Scotsman Industries, Inc.*, 106 S.W.3d 751, 754 (Tex. App.–Fort Worth 2003, no pet.) (finding that a parent corporation did not owe a duty to maintain a safe workplace to the employee of its subsidiary because the employee failed to show that the parent corporation controlled aspects of safety on the premises); *Ramirez v. Garcia*, 413 S.W.3d 134, 151 (Tex. App.–Amarillo 2013, no pet.) (finding that a general contractor owed a duty to the employee of its independent contractor to ensure that trucks were in a safe condition). The distinction between immediate employers and other related entities is significant in negligence cases because the degree of control that an entity exercises over an employee can determine whether that entity owed an employee a duty.

Often in cases where an employee has sought to hold an entity other than its immediate employer liable for failing to provide a safe workplace or safe equipment, Texas courts have required the plaintiff to show that "the party it asserts had a duty to provide a safe workplace had actual

control or a right of control over the specific aspect of the safety and security of the premises that led

to the plaintiff's injury." *Morris*, 106 S.W.3d at 754(citing *Exxon*, 867 S.W.2d at 23); *Ramirez*, 413

S.W.3d at 151; *Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 716-719 (Tex. App.–Fort Worth 2013, no

pet.). A court does not infer duty from a right to control the general operation of the workplace, but

instead should consider whether the purported employer had the right to control the specific safety

defects that led to the plaintiff's injuries. *Exxon*, 867 S.W.2d at 23 (holding that plaintiff must show

that the landlord oil company had the right to control the alleged security defects that led to

plaintiff's injury in order to establish that the company had a duty to maintain a safe workplace);

*Morris*, 106 S.W.3d at 754 (holding that plaintiff did not establish that defendant corporation had

a duty to maintain a safe workplace because plaintiff failed to show that defendant had specific

control over the safety and security of the premises); *Ramirez*, 413 S.W.3d at 151 (holding that

plaintiff needed to show that the general contractor retained control over the activities or conditions

that actually caused the plaintiff's injuries, specifically the condition of trucks used in transporting

grain, in order to establish a duty to ensure that the trucks were in a safe condition). Thus, in order

to show that RSI owed him a duty, Parham must not only raise a genuine dispute of fact as to

whether he had an employment relationship with RSI, but he must also provide evidence of RSI's

right to control the aspects of his safety that led to his injuries.

RSI insists that it was not involved in the injury-producing incident in this case and that it

had no employment relationship with Parham. It relies first on Parham's own deposition testimony,

in which he states that he worked for Ryder Integrated Logistics, Inc., and not RSI, when he was

injured. Doc. 20-4, Parham Dep. Ex. 4, at 40-41, 86. It also relies on the affidavit of Todd Hammell,

Customer Logistics Manager for Ryder Integrated Logistics and Parham's former supervisor, who

states that Parham was employed as a driver for Ryder Integrated Logistics. Doc. 20-6, Hammell Aff. Ex. 6 ¶ 5. Finally, RSI points to the affidavit of Sanford J. Hodes, Senior Vice President and Deputy General Counsel for RSI, which states that RSI has never had an employment relationship with Parham, including from August 2004 when he started his work for Ryder Integrated Logistics until the day of the alleged accident, September 9, 2010.  Doc. 20-5, Hodes Aff. Ex. 5 ¶ 9.

Parham attempts to rebut RSI's evidence with primarily circumstantial proof that he had some relation to RSI. He first points to evidence from pre-litigation correspondence that indicates that RSI was his employer.  He provides a letter from Julie M. Lamberth, Senior Vice President of PartnerSource, in which Lamberth acknowledges receiving a letter of representation from Parham's counsel and indicates that she will be responding to Parham's claims on behalf of "Ryder System, Inc." Doc. 21, Lamberth Letter Att. B. Parham also provides a letter from Colleen Murphy, Claim Representative for Ryder Transportation Services, who also acknowledges receiving a letter of representation from Parham's counsel and states that she will be the claims representative on the case. Doc. 21, Murphy Letter Att. C. Parham also submits another letter from Lamberth in which she responds to a settlement demand letter sent to Murphy, her, and others. Doc. 21, Lamberth Letter Att. D. Lamberth acknowledges receipt of the demand letter and again identifies "Ryder System, Inc." as Parham's employer. *Id.*

Parham also points to letters and correspondence uncovered during discovery that indicate he has some sort of employment relationship with RSI. He produces an email from Robert Wood, Senior Logistics Manager for Ryder Systems, Inc., to Bertha Padilla, discussing a confrontation that Parham had with Hammell and detailing Wood's attempts to communicate with Parham. Doc. 21, Wood Email Att. W. He also provides an email from Todd Hammell to Robert Wood which details

an encounter that Hammell had with Parham. Doc. 21, Hammell Email Att. X. Finally, he provides

two pages from his application for employment in 2004, one of which states that "Ryder System, Inc.

consistently checks reference information" while the other states that any potential employment

relationship is "terminable at will, by either myself or Ryder System, Inc." and that only the "Chief

Executive Officer of Ryder System, Inc." could make an exception to this policy. Doc. 21,

Application Atts. Y-Z.

The evidence submitted by Parham is sufficient to raise a genuine issue of material fact as to

whether he had some sort of employment relationship with RSI, but it is insufficient to raise an issue

of fact as to whether RSI was his immediate employer. In his email, Wood identifies himself as a

Senior Logistics Manager for RSI, and the content of the email indicates that he has some

involvement with personnel affairs that related to Parham. Doc. 21, Wood Email Att W; 21,

Hammell Email Att. X. Furthermore, while RSI argues that the letters from Murphy and Lamberth

are from third parties who mistakenly named RSI as Parham's employer, doc. 22, Def.'s Reply 7,

Lamberth's identification of RSI as Parham's employer seems less likely to be a mistake in light of

Wood and Hammel's correspondence.[3] The summary judgment evidence therefore raises a genuine

issue of fact as to whether RSI exercised some sort of control over Parham's employment.

At the same time, the summary judgment shows that RSI was not Parham's immediate

employer. RSI claims that it had no employment relationship at all with Parham. Docs. 20-5, Hodes

---

[3]The single letter from Murphy that Parham submits does not support his argument that RSI was his employer. Murphy identifies herself as a claims representative for Ryder Transportation Services, not RSI, and indicates that Parham's employer is "RIL," which is more consistent with RSI's claims that Ryder Integrated Logistics was Parham's employer. Doc. 21, Murphy Letter Att. C. The pages from Parham's 2004 application are similarly weak evidence because they also contain the name of Ryder Integrated Logistics, the company that Parham states he worked for in his deposition, and do not indicate which company specifically Parham was applying to work for. Doc. 21, Parham Application Att. Y, Z.

Aff. Ex. 5 ¶ 9; 20-6, Hammell Aff. Ex. 6 ¶ 5; 19, Def.'s Br. 7; 22, Def.'s Reply 6-8. Although this argument seems somewhat disingenuous given the evidence that Parham submits to show that he likely had some sort of relation to RSI, it does suggest that RSI is at least not Parham's immediate employer. Parham's own deposition testimony confirms this, as he stated that Ryder Integrated Logistics was his sole employer at the time of his injury. Doc. 20-4, Parham Dep. Ex. 4, at 40-41, 86. Parham does not contradict these statements, but instead submits two letters from Lamberth and emails from Wood and Hammell to show that RSI was his employer. Docs. 21, Lamberth Letter Atts. B, E; 21, Wood Email Att. W; 21, Hammell Email Att. X. But these letters and emails do not clarify the relationship between RSI, Ryder Integrated Logistics, and Parham, and are just as likely to have occurred if RSI was Ryder Integrated Logistic's parent or sister company as they would have if RSI was Parham's immediate employer. Finally, the application that Parham submits actually shows that RSI is a separate but related company to Ryder Integrated Logistics. Doc. 21, Parham Application Atts. Y, Z. It mentions both RSI and Ryder Integrated Logistics and suggests that RSI has some sort of supervisory authority over personnel matters at Ryder Integrated Logistics. *Id.* All of this is to say that while there is a genuine issue of fact as to whether RSI and Parham are connected in some way, RSI is clearly not Parham's immediate employer, and therefore the control analysis of *Ramirez*, *Exxon*, and *Little* is appropriately applied to determine RSI's duty to Parham in this case.

Parham fails to raise an issue of fact as to whether RSI exercised control over the aspects of safety that led to his injury, and thus fails to raise a genuine issue of fact as to whether RSI owed him a duty to maintain a safe workplace or safe equipment. RSI presents evidence to show that it did not own, maintain, or control the truck, trailer, or site where Parham was injured. It points to Hodes' affidavit, which states that RSI has never owned, leased, possessed, or otherwise controlled or

maintained the trailer, truck, or site where the alleged injury occurred. Doc. 20-5, Hodes Aff. Ex. 5 ¶¶ 9-11. It also notes that Parham admitted in his deposition testimony, and that Hammell stated in his affidavit, that the trailer at issue was owned by XTRA Lease and leased to PrimeSource, and that the site where Parham was allegedly injured was owned by PrimeSource. Docs. 20-4, Parham Dep. Ex. 4, at 87; 20-6, Hammell Aff. Ex. 6 ¶¶ 7-8. Parham, in turn, submits no evidence to show that RSI had the right or undertook a duty to control the specific aspects of the workplace that led to his injury. He merely alleges in his Response that RSI had a duty to provide a safe workplace and safe equipment, and therefore a duty to insist that the trailer on which Parham worked had a step or ladder. Doc. 21, Pl.'s Resp. 9. Mere allegations of duty, without proof that RSI had the right to exercise control over the specific aspects of the premises or equipment that caused Parham's injury, are wholly insufficient to raise a genuine issue of material fact as to duty. *See S&W Enterprises, LLC v. Southtrust Bank of Alabama*, 180 F. Supp. 2d 811, 816-17 (N.D. Tex. 2001).

Because Parham fails to establish the essential element of duty in his negligence claim, the Court **GRANTS** RSI's Motion for Summary Judgment as to Parham's negligence claims. And because a defendant cannot maintain a gross negligence claim without first establishing negligence, *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 206 (Tex. App.–Texarkana 2008, no pet.), the Court also **GRANTS** RSI's Motion for Summary Judgment as to Parham's gross negligence claims.

## IV.

## CONCLUSION

For the reasons stated above, RSI's Motion for Summary Judgment (doc. 18) is **GRANTED** as to all claims.

**SO ORDERED.**

-15-

SIGNED: January 12, 2014.


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE